Good morning, and thank you for welcoming us. Those of you who attend or work at North Carolina Central, it's a pleasure to be back here. We appreciate your hospitality, and we also appreciate the fact that the lawyers have traveled to be here with us today. We will begin with oral argument in our first case, 15-1153. Mr. Hunter, when you're ready. Thank you, Your Honor. My name is John Hunter of the Buncombe County Bar. I represent the appellate in this appeal, Mr. Fred Leonard. And I would like to thank the panel for coming to Durham and saving me the long trip up to Richmond. I'm three and a half hours away from this courtroom versus about eight. It was completely uncalculated, but I'm glad it worked out. It worked out very well, Your Honor. I do wish to reserve five minutes of my time today for rebuttal. On October 11, 2012, following over two years of litigation between the parties in this lawsuit, the magistrate judge for the Asheville Division of the Western District of North Carolina imposed the harshest sanction available under Rule 16 of the Federal Rules of Civil Procedure against Mr. Leonard. He struck Mr. Leonard's answer in affirmative defenses and entered a default judgment against him on the issue of liability. Thus deprived of the ability to defend himself against the allegations in the complaint, including, most egregiously, that he engaged in a civil fraudulent misrepresentation, this default led directly to a subsequent damages award against Mr. Leonard in excess of half a million dollars. Because the district court entered the default judgment in the absence of what we contend are the most basic of due process rights, that is, notice and a meaningful opportunity to be heard. How did he not have notice? The court gave notice more than once, talked about the possibility of a default judgment at several hearings, so how was there not sufficient notice? What more do you require? Your Honor, it is correct to say that in the order that came out of the October 3rd pre-trial conference hearing that was conducted, that the magistrate judge put in that order – well, first, as you know, he imposed a $2,500 sanction on Mr. Leonard due to the activities of his counsel, it appears from reading that record. Which Mr. Leonard never paid. That's correct, Your Honor, and he gave Mr. Leonard five days in which to pay that amount. And he did say in that order, Your Honor, that failure to pay that would, I think he said, he indicates the language is fairly strong, would result in the entry of a default. However, had, I believe, had the magistrate judge – and Mr. Leonard did not pay that. Now, setting aside the fact that he filed personal bankruptcy prior to the deadline for actually paying that fine, setting that aside, had the magistrate judge wanted to find him in default for not paying that $2,500, he could have done so without any, in my opinion, without any further hearing from Mr. Leonard. Without any further hearing into Mr. Leonard's conduct, and he could have done it essentially with a one-sentence order. However, that's not what occurred in this case. He subsequently, following the October 3rd hearing, as you know, he indicated that there would be a follow-up hearing, a Rule 11 hearing, to inquire into the conduct of counsel only and as to whether those counsels should be subject to further Rule 11 sanctions. The notice for that hearing was very specific. It indicated that the court had concerns over the conduct of the counsel and, quote, the court directs Attorney Langford and Attorney Neidhart to appear at a hearing on Thursday, October 11th, 2012, to show cause why they should not be further sanctioned under Rule 11. So that was the notice that was given. Again, I'm a little unclear how that helps you because the sanction, he was not current in payments and he was present at the October 3rd hearing and the question that Judge Thacker asked is what more notice was required than what he had when he heard at the October 3rd hearing that, well, the district court said it would consider sanctions. It was the most frustrating pretrial conference it had ever experienced. Yes, Your Honor. What I'm saying, what I'm telling the court is had the magistrate judge based the dismissal simply on the nonpayment of the fine, I think he could have done that. But he did not do that. At the October 11th hearing, he announced Sue Saponte from the bench that that hearing was going to have two parts. And if you read the transcript, this is very clear. He said we're going to inquire into the Rule 11 conduct of these attorneys and then we're going to move forward with whether or not further sanctions are justified against Mr. Leonard. And prior to that hearing, he had not given Mr. Leonard any indication that Mr. Leonard would be subject to any further sanctions to be discussed or reviewed at that hearing. And, in fact, what he then went on to do and what happened at that hearing is Mr. Leonard's lawyers, who were there under threat of a Rule 11 sanction, who were there with their own attorneys, the chief counsel for Leonard, Ms. Langford, was there with her own attorney to protect her own interests from a Rule 11. But having already been threatened with contempt at the October 13th, October 3rd hearing, those counsel, their defense against the Rule 11 sanctions was to attack their own client, Mr. Leonard. And so if you read the transcripts, it's clear that what happened at that October 11th hearing was not just what had been noticed, but that there was further evidence taken as to whether or not the ultimate sanction, the Rule 16 ultimate sanction, should, in fact, be imposed. So it's clear that there was an additional hearing. It was clear that Mr. Leonard was not given notice that that was going to occur. And if you read the order that came out of the October 11th hearing, it's clear that the mere fact that he didn't pay the $2,500 is not the only basis for which the magistrate judge imposed the dismissal. Mr. Hunter, I have 2 questions. First, I have to say, having been on the district court for 14 years, federal district court for 14 years, I am unfamiliar with the notion that a judge imposing sanctions not only imposes sanctions in the form of a monetary award in the context of a discovery. Such as here, but conditions somehow conditions the payment of that sanction on further sanction. It's just not something I'm familiar with. Is this something that happens regularly in North Carolina? The judge not only says pay up, and if you don't pay up by a certain date, then you're still in trouble. I would have thought it was enough for the judge to enter an order in the form of a judgment in favor of party X against party Y. Courts normally don't get involved in whether a judgment is paid. Your Honor, I agree with you. He had already entered the sanction against Mr. Leonard for what his counsel had done or not done at the pre-trial conference. If you recall in the record, Mr. Leonard was there for the pre-trial conference. His attorney did not show up. He had already, the magistrate judge had imposed that sanction. And what he did was because Mr. Leonard evidently, and as I said, he had filed personal bankruptcy prior to the due date for that fine being paid. He went, he then went to respond without any notice into this additional into all these additional facts. Okay, that leads to my 2nd question. So, so, as I understand your position, your position is. Whatever else happened, Mr. Leonard was entitled to know in advance that the October 11th hearing would deal with him. That's right. That's correct. And that's essentially what you're what you're he was entitled to have some notice from the court. That at this October 11th hearing, we're going to inquire into your conduct, Mr. Leonard. And if I decide that the magistrate judge decides that that additional conduct merits a dismissal, then you, you, you stand at risk of default. I believe that would be a possible remedy. Well, is there any other remedy given that you claim is the, is the error below? Well, I believe it would be possible for the court simply to set aside. Why would we do that? I agree your honor that typically in a due process case that what what would the remedy would be to ask the court or to direct the court to provide the due process that we claim was not there. I would say, given the history of this case, given the status of this case, we would ask if that were to be the remedy this court would order that it be in front of someone other than judge magistrate judge, how he has already made findings of fact in this issue. And he refused. If you go back and look at the record, Mr. Leonard at the October 3rd hearing said to the judge, realizing his attorneys were not representing him properly. Said to the judge, judge, may I be heard on these issues that you're that you're considering against me? And the judge said, no, you may not be hurt. So we would ask that. Well, he was represented. I'm still unclear. Assuming the facts as you present them, how was Mr. Leonard prejudiced in any way by the additional discussion at the October 11th hearing? When and I'm reading from the transcript from the October 4th order. The failure of defendants to comply within the time frame set forth in this order will will result in the court striking the answer and entering default judgment. What more? I don't understand how possible any possible elaboration on the clarity of that language. It's the least ambiguous language I've ever seen. It is your honor. But that's not what he entered the order based on what he could. What? I'm not sure. Well, for whatever reason, the magistrate judge did not say, I'm defaulting you because you did not pay the twenty five hundred dollars. It's possible because I doubt that there was any prejudice to the plaintiff. Not due to the nonpayment of the twenty five. So that goes back to Judge Davis's question. You're you're really you're not saying that he ever was in compliance with the October 4th order. So since he wasn't in compliance with the October 4th order and was subject to default, why would not? The only remedy to which he would be entitled to be would be to go back and ask the judge to explain exactly what he based the default judgment that he subsequently entered on. Well, your your honor, I don't believe I believe he does tell us in the October 11th what he based that in the in the October 19th order. He the the court reiterates just what Judge Duncan read and then says, despite this warning, defendant failed to comply with the court's order. That's what he based his default judgment on. Just like he said he was going to your honor. But if you read the order, if you read the order further, he says, moreover, as the court stated on the record during the hearing, defendants have plotted and schemed to delay and undermine undermine the trial in this case. So your argument is that he did too much. The magistrate judge said too much. Yes, your honor. My argument is, is that clearly in deciding to enter this default judgment, he didn't just look at the twenty five hundred dollars being paid. He made these adverse findings of fact against Mr. Leonard. He went on to say, in addition, defendants undermine counsel's ability to prepare for the pre trial conference and for the trial. The court finds that the defendants have acted in bad faith throughout these proceedings. Those are the reasons he gave for imposing this ultimate sanction. And all of those come from the self-serving statements made by his counsel, first under threat of contempt and then under threat of rule 11 sanctions. And Mr. Leonard had no time, no notice and no ability to respond to those when he was in actually physically in the courtroom. He tried and judge how refused to let him speak because he was represented by counsel. Yes. But if you read the transcript, particularly at the October 3rd hearing, Langford, his chief counsel was not present. And his local counsel, my fourth was present, but totally unable. He just met Mr. Leonard that morning at the courthouse door and candidly told the court, I am not in a position to represent my Mr. Leonard at this hearing. At the October 11th hearing, I think it stretches credulity to say that those lawyers were there to represent Mr. Leonard. Langford had her own attorney to defend. Your point is the judge needed Langford and Leonard in the same room at the same time, able to cross examine each other. That's right. But I think that if he was going to base the default on the findings he made in the October 11th hearing, he had to allow Mr. Leonard a chance to present something to present. And he was trying to. He tried at the October 3rd hearing. Does your argument fail? Does your argument require us to accept the fact that that was indeed what he based what the magistrate judge based his entry of default on? In order for you to prevail, do we have to agree that the magistrate judge did in fact base his decision to enter default on these other factors, the moreover factors, after he had already found the failure to comply? Your Honor, I think you have to base that on what – yes, and that's what's in his order. The judge himself said that, Your Honor. Real quickly, what I – You have some time on rebuttal. Yes, thank you, Your Honor. Mr. Fulton. Thank you, Your Honor. May it please the Court, my name is Ross Fulton, with me is Ben Shook with the firm of Rayburn Cooper & Durham in Charlotte, North Carolina. We're here on behalf of the Appley RDLG LLC. I'll skip the background, Your Honor. I think that the Court has a good grasp of the facts here. I'd just like to walk through a little bit of the timeline of the relevant periods of this case. Way back in February of 2012, the Court entered a consent order setting the trial date for October 15th of 2012. This was the trial date that was in place when Mr. Leonard hired Ms. Lineford and Mr. Neihart in May of 2012. They were his fourth and fifth attorneys in this case, the first three having withdrawn, Mr. Hunter being the sixth. He also was represented by two different attorneys in the Tennessee bankruptcy case. On September 6th, 2012, the Court ordered the parties to appear for a pretrial conference a month later on October 3rd. There was a one-month period to prepare for that hearing. It shouldn't have been a surprise knowing the October 15th trial date was coming up and that that had been in place for 10 months. Nothing was filed by Leonard or his counsel until September 30th, a mere three days before that hearing, at which point they requested that that pretrial hearing be continued. I don't mean to interrupt, but I think we really get all of that. This appeal is about, as I understand it, what happened between October 3rd and October 11th. And the argument here is Leonard had no reason to believe, based on what happened on October 3rd and the order that set the Rule 11 hearing, that he needed to be there on October 11th. Now, from a common-sense point of view, a litigant acting in good faith would surely have been there. But in terms of what the Court ordered, I don't see any indication in the record that he was ordered to be there. And so he wasn't there. And he had his bankruptcy lawyers currently sitting in the back somewhere just observing things. And so the argument is made that what was supposed to be a sanctions hearing focused on counsel somehow metamorphosed into some kind of default hearing on Mr. Leonard. So it seems to me that's what the appeal is about. And, Your Honor, I disagree with that characterization. Okay. Tell me why. I want to step back to the October 3rd hearing. At the October 3rd hearing, I don't think anyone seriously disagrees that sanctions were not appropriate at that time. Ms. Lankford wasn't there. She had been ordered multiple times to be present. But they were imposed! You mean sanctions against Lankford? Sanctions against who? Yes, Your Honor. Just walking back to that October 3rd hearing, I want to establish what happened at that hearing. So Ms. Lankford wasn't present. No one disagrees with that. Correct. Mr. Neihardt was not prepared. No one disagrees with that. Mr. Leonard was present. Mr. Leonard was present. And not allowed to speak. He was represented by counsel, Your Honor. He was not allowed to speak. He asked personally to speak. The judge asked Mr. Neihardt to speak on his behalf. Okay. Go ahead. That was his counsel. He gave Mr. Neihardt every opportunity to explain what had happened. But Mr. Leonard was not allowed to speak. Mr. Leonard personally was represented by his counsel. Mr. Leonard was not allowed to speak. It doesn't hurt you to say he wasn't allowed to speak. There might have been a very good reason that he wasn't allowed to speak. But factually, the characterization is correct. He wasn't allowed to speak. That's true, Your Honor. He asked to speak personally. I don't think you want to spend a lot of time on that. That's right, Your Honor. He asked to speak personally. And he was told no. His counsel was allowed to speak for an hour and a half at that hearing. Now, following that hearing, the court made a number of findings. And the findings that it made came out in the October 4th order. And in the October 4th order, the judge said that both defendants, that would be Mr. Leonard and his companies,  based on a motion for sanctions that your client made? Your Honor, at the October 3rd hearing, we stood up and made an oral motion for sanctions under Rule 16F, based upon the failure to prepare, as it became clear that Mr. Leonard had put forth no exhibits, no witnesses, and were totally unprepared to talk about the merits of the case and the trial that was scheduled less than two weeks from that date. And so the court issued that order and said, in the October 4th order, that both in response to our oral motion at the hearing and sua sponte, under his own authority, the judge said, I find the defendants and counsel both responsible for what happened at the October 3rd hearing. Well, were there deadlines? What was the time frame for? I'm looking through the October 4th order. What was the time frame for payment by Leonard of the 25, within five days of entry of this order? Correct, Your Honor. So it was self-limited. That's right, Your Honor. And the order was entered, actually, the next day on October 5th, and so Mr. Leonard had until October 10th to pay that sanction. And no one disputes that he did not, in fact, pay the sanction. This was a fine that was ordered for him to pay to the court. He was also ordered to pay a portion of my client's attorney's fees spent at that hearing that was deemed by the court to be a waste of time. And he was told in no uncertain terms that failure to make those payments would result, would result. Will result. Will result in the striking of his answer and the entry of default. He did not pay those sanctions. In that order, it did state that there would be a hearing on October 11th regarding Rule 11 sanctions for his attorneys. Now, in that order, it also didn't state that I should be present, that I was there. I came to the October 11th hearing. Now, Mr. Leonard didn't, but his counsel were there. But they certainly weren't there to represent him at that point. Your Honor, they were under an ethical duty. They were still his attorneys of record in that case. Now, whether or not they did that job appropriately would be a question for Mr. Leonard to bring to a malpractice action against his own attorneys. And that's what the Supreme Court has said in the Link versus Wabash railroad case that we cite in our brief. Now, what they say there is the sins of the opposing counsel, the opposing party's counsel are not to be weighed against my client. Now, all Mr. Leonard has said is that my own attorneys threw me under the bus while they were my attorneys of record in that case. Now, I will note there's nothing in the record that rebutts anything that they said about Mr. Leonard's failure to cooperate in this case. He didn't put forth a statement or an affidavit. He didn't file a motion for reconsideration. He didn't file a Rule 60 motion to overturn any of these orders. He had two other lawyers in the Tennessee bankruptcy case that were representing him. He has Mr. Hunter now once this case was reopened. There's no Rule 60 motion. There's no motion for reconsideration. There's no affidavit. There's no unsworn statement. There's a timely appeal. Yes, Your Honor. There's a timely appeal from the district court's order. So what if there's no Rule 60 motion? So what if there's no request for reconsideration? But there remains nothing in the record, Your Honor, that indicates that any of the court's findings of fact, that Mr. Leonard himself was responsible, were incorrect. There is nothing in the record. Why is that required for him to show a deprivation of due process? Because, Your Honor, the standard here is both abuse of discretion when sanctions… No, it's de novo. A question of due process is a legal question that we review de novo. Here, Your Honor, the case that—and I disagree, and I'd like to explain why. Well, you may. I'd like just to hear you explain why. The case that the appellant cites, the Chowdhury case in his brief, is an unpublished per curiam decision of this court that rejects an appeal of an immigration board's denial of a petition for asylum. Now, that's irrelevant to this particular decision. Just saying the words due process doesn't transform a sanctions order that's reviewed under abuse of discretion into a de novo review. He's actually not even challenging, as I understand it. It's cutting it rather nicely. But he's not challenging the sanction. He's not challenging the sanction other than insofar as the process that led up to the sanction. He's saying he's entitled to an opportunity. As we just heard Mr. Hunter say, he's entitled to have the district court examine all of the reasons why the district court concluded that an order of default was appropriate here, because he wasn't at the October 11th hearing, and he hadn't been ordered to appear at the October 11th hearing. Your Honor, by the time the October 11th hearing occurred, he already had been ordered to pay a sanction. Can I ask you about that, by the way? What's this about pay by Tuesday or this happens? Is that standard practice in North Carolina districts? Your Honor, this was a specific sanction authorized by Rule 16-F, which incorporates Rule 37, in which the court found that Mr. Leonard's failure to participate in the pretrial process. He had been ordered to participate in this pretrial process. He found that Mr. Leonard was responsible. Under Rule 16-F, incorporating Rule 37, the court had the authority to issue any of the Rule 37, which we call the discovery sanctions, against him. What he decided to do was to order a sanction of a fine to the court, payable to the court. And why not all the payment to opposing counsel's fees? Why pay to the court? What's going on here? I understand we Article III judges need all the money we can get. Your Honor, he... But pay to the court when the harm has been done to the interests of the client. I understand wasting the court's time is not something a judge should blink at. But the costs incurred here were the sunk cost imposed on your client through attorney's fees and preparation litigation costs. A fine to the court doesn't compensate your client for those costs. Your Honor, he also ordered that, but he also found that Mr. Leonard wasted the court's time. And he found that under the third of the Wilson factors, which this court has instructed courts to use, for purposes of finding that due process was followed in sanctions proceedings, he found that the need for deterrence required him to order Mr. Leonard to pay a fine to the court. That's what his October 4th order states. And, Your Honor, what I would contend is that the Wilson factors from this court's opinion, I think way back in 1977, those factors as to whether the non-compliant party acted in bad faith, whether the opposing party was prejudiced, whether the actions required deterrence, and whether less drastic sanctions would have been effective, those are the procedures that this court has put in place for district courts to find for purposes of preserving due process in the context of sanctions. But the standard of review remains abuse of discretion. And that's what this court found in Anderson v. Foundation for Advancement. I think you slid from a discussion with me about the $2,500 into a discussion about the default and the order after the October 11th hearing. Am I right? Did you just make that? I think these things are tied together, Your Honor, because that initial... But they're distinct. The initial $2,500 fine was clearly a sanction ordered by the court under its authority under Rule 16F, which would be reviewed for an abuse of discretion. And here, the court found that the defendant was responsible, found that deterrence was necessary, found that the court's time had been wasted in order to find payable to the court. And what the judge said in that order was, if you do not pay this, I will strike your answer and enter default. Can we go back for what I understood to be, although it may be something of a moving target, that Leonard's argument was lack of notice and an opportunity to be heard with respect to everything after moreover. Because there's no dispute that as of the deadline, October 10th, the fine hadn't been paid. So we know that. But the district court went on and said other things. I'm going back through, and I'll ask Mr. Hunter this as well. I'm going back through the October 4th argument, and the magistrate judge appears to be doing everything possible to cover his bases in explaining his irritation and talks about the severity of the sanction requiring or perhaps necessitating a finding of bad faith or abuse of the judicial process. It goes on to say that defendants and counsel moved to withdraw the motion to continue in bad faith as a means of delaying the case and prohibiting the trial from going forward on October 15th. What was in the moreover language that wasn't reflected in the October 4th order? Do you know? Your Honor, I think that's a great question. I thought you might. I think that Magistrate Judge Howell had already found the defendant responsible in the October 4th order when he issued the October 11th order. And I really think it's quite incredible that what Mr. Leonard is saying is, you could have gone ahead and just defaulted me on October 10th when I didn't comply with the order. Which everyone agrees, I did not comply with, I had notice of, I didn't do it. And what he's instead saying is, given the opportunity for his attorneys to defend him yet again. Now whether or not they did a good job of it, Judge Howell went on the record on October 11th and asked his attorneys one more time, do you have anything to say before I go ahead and strike your client's answers and enter default? Now they didn't jump up and defend him, but they had another opportunity to. And what he's saying now is being given that additional opportunity is somehow depriving him of due process. Now Your Honor, I'd like to point to this court's ruling in the Young Again Products v. Ortega case from 2011, which is cited in our brief. And I think is a good illustration of what we're saying here. In that case, there was a, just a notice on the docket that went out on March 19th saying that we plan to rule on docket number 256, which happened to be a motion for default judgment by the plaintiff in that case that had been filed two days prior on March 17th, at a hearing four days later on March 23rd. And what the court, this court found, after a $3.8 million default judgment was entered against two individual defendants in that case, was that while it is true the district court did not explicitly warn appellants that it would definitely enter a default judgment at the March 23rd hearing, we find that they surely had constructive notice that it might. And just being given that level of notice has been found by this court to be sufficient just five years ago. I will note that at that same March 23rd hearing in the Young Again Products case, one of the lawyers representing the sanctioned parties, Mrs. Ortega, requested permission to withdraw and put into the record three letters between the lawyer and his client, Ms. Ortega, in which the lawyer was telling her, I need your help to prepare for this pretrial hearing. Second letter, I really need your help to prepare for this pretrial hearing. You're not helping me. Third letter, again, I really need your help. And she goes ahead and blames her lawyer for the sanctions when she gets up to the Fourth Circuit. And this court goes back and looks at the three letters that are in the record. They were entered into the record on March 23rd, the same date as the hearing at which the sanction was entered. And this court relies on those letters from her counsel, her own counsel, clearly defending his own interests, again, to his client, Mrs. Ortega, at which she basically is thrown under the bus, if you will, and made to blame for this failure of preparation. And here, the only thing we have in the record are the statements of Mr. Leonard's lawyers and the sworn statements of Mr. Leonard's lawyers stating that he failed to cooperate in their preparation for the pretrial hearing. And the judge did make findings about that. He made findings about that coming out of the October 3rd hearing. And, Your Honor, I think the best that Mr. Leonard could argue for here is he's saying that despite his failure to comply with the court's pretrial orders, despite being present at the hearing when the sanctions were discussed, despite getting actual personal notice of the sanctions ordered against him within the time to comply, and knowingly and voluntarily failing to comply with that order, and despite knowing that the hearing was occurring on October 11th in the case, and despite the court giving his lawyers at that October 11th hearing yet another chance to defend him, the court should find it to be reversible error and an abuse of discretion for the judge not to go past Leonard's attorneys and initiate direct communications with him personally when he's put nothing in the record indicating that anything would be different in this case had he been given the opportunity to do so. Your Honor, in my last minute, I'd like to go into the jury instruction issue, which Appellant raised in his brief but did not raise an oral argument. Just note again, we believe the standard of review there is an abuse of discretion. And here, what Appellant is saying is that in a state law fraud claim, where the North Carolina pattern jury instruction for fraudulent misrepresentations was given, that that was an abuse of discretion and a reversible error. It's undisputed that, I think everyone agrees here, the jury's calculation of RDLG's actual damages from Leonard's fraud is what's represented by its judgment. Instead, what Appellant would ask this court to do was force the district court to have the jury sit and basically act as the bankruptcy judge to collaterally attack an order the bankruptcy judge already found, what portion of those damages are non-dischargeable. She said it's all. Unless Your Honor has any further questions, I believe my time is up. Thank you. Thank you. Mr. Hunter, you have some rebuttal time? Yes, Your Honor. I'm glad that the counsel for the appellee in this case brought up the Young Again Products case because a reading of that case puts what happened to Mr. Leonard in, I think, stark contrast. In the Young Again Products case, Your Honor, which I believe you are familiar with… It's unpublished, right? It's an unpublished opinion. I've never spent so much time in oral argument on an unpublished opinion. That's right. But, Your Honor, it's important because this statement appears in that case. At the scheduled pretrial conference, the court heard extensive testimony about the failure to cooperate in the pretrial process. So, clearly in Young Again, there was, at that pretrial conference, an opportunity for the party that was being sanctioned to be heard on this issue of lack of cooperation, which did not occur here. Here, I just don't see a failure of notice in reading the clear language of the first order, paragraph 5 of JA 131, says, again, failure of defendants or counsel to comply with this order will result in entering default judgment against defendant and or the instigation of contempt proceedings against counsel. So, entering default judgment, which is what happened in the second order, and or he had the contempt proceeding hearing October 11th against counsel. That's what it was. Yes, Your Honor. I just don't see where… I agree with that, but I think what actually occurred at that October 11th hearing and the reasoning set out for the default goes well beyond that issue. I do think, as I've said, I think the magistrate judge, and I can't read his mind as to why he… Oh, go ahead and do it. You know full well why he did not strike an answer and enter default simply for failure to pay a fine within a week. I think that the judge felt like that would be an infirm action, because there would be no prejudice to any parties due to the failure of Mr. Leonard to pay a fine to this court. So, I don't believe that would have withstood review, Your Honor. So, a party can ignore a sanction imposed by the court without consequence? I think that the proper course of action at that point would have been for Magistrate Judge Howe to hold a show cause hearing as to why there shouldn't be a default entered on all of these issues that he entered the default on. He simply refused to do that. It's interesting that Mr. Fulton wants to tell you that Mr. Nayforth, the lawyer who was at the October 3rd hearing, spoke for an hour and a half and represented Mr. Leonard effectively there. Here's what, if you read the transcript, here's what Mr. Nayforth told the court. He said, Your Honor, I've just met my client, but I can tell you he disagrees with the statements that Langford has submitted to this court last night. He disagrees with those. There is a conflict of interest between Mr. Leonard and his lawyers. And the judge totally denied, totally ignored that. Excuse me. Ms. Langford tried her level best to withdraw from representing Mr. Leonard. Your Honor, it's my understanding that she filed one motion to withdraw two days before the hearing, and she submitted no evidence as to any of these statements she made. It is incorrect to say she submitted a sworn affidavit. If you read it, it's not sworn. If the – okay, so she – she – Leonard maintains that there was no communication with him about her informing him that she would no longer represent him? That's right, Your Honor. All of that was filed on the eve of the pretrial hearing. She had left the country. But it was in a motion to withdraw. Which was denied. But that doesn't – that doesn't go to my question. The motion to withdraw was denied. I'm asking about the statements in the motion to withdraw. Right. They were made. They were not sworn testimony. There is no – there were no documents. Like in the Young again case, there was no e-mails. There were no three letters. She simply presented that as a way to avoid a contempt citation, Your Honor. She was, again, defending herself at the expense of – at the expense of her client. If you look – No, this – this was in the – I'm talking – this is in the October 4th order. Yes, Your Honor. Where there had been no contempt. No, the order telling her – she tried to get a continuance and to withdraw. When she left, okay. And the judge said, you be at that hearing or I'm going to hold you in contempt. I see what you're saying. And that's when she submitted these statements against my client's interest in that. Thank you. You – do you want to – your red light's been on for a while. Do you want to briefly conclude? I will, Your Honor. I will just say this. The facts in this case put it clearly outside the mainstream of this court's Rule 16 jurisprudence. I understand that there's a desire to allow the district court to manage its docket and move forward with this case. But when you have these sorts of facts, it clearly puts it outside that mainstream. And Mr. Leonard needs to have essentially a show-cause hearing on this default order. Thank you, Your Honor. Thank you very much. We will come down in Greek Council and proceed directly to the next case. Could you give a break? I'm sorry. Okay.
judges: Allyson K. Duncan, Stephanie D. Thacker, Andre M. Davis